UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

**DECISION AND ORDER**
10-CR-59-A

TAMIKA DAVIS,

               Defendant.

---

On April 18, 2013, the defendant, Tamika Davis, was charged in an Amended Petition for Offender Under Supervision (the "Petition") pursuant to 18 U.S.C. § 3583(e) with eight violations of conditions of supervised release. Based upon evidence admitted during a hearing held in accordance with Fed. R. Crim. P. 32.1(b)(2), the Court finds defendant Davis guilty of the violations alleged in Charges 1 through 7 of the Petition, and not guilty of a violation alleged in Charge 8.

## BACKGROUND

On August 5, 2010, defendant Davis was sentenced for bank fraud in violation of 18 U.S.C. § 1344 for having negotiated counterfeit checks using personal information and a bank account of a woman who was in jail. Under applicable Sentencing Guidelines, and in light of various sentencing factors and defendant's prior criminal convictions, defendant faced an advisory range of imprisonment of 21 to 27 months.

The Court sentenced defendant Davis, in pertinent part, to a term of imprisonment of 27 months, to be followed by five years of supervised release, and to pay restitution to bank victims of $12,900. A Judgment in a Criminal Case reflecting the sentence was filed on August 12, 2010, and an Amended Judgment was filed on October 5, 2010. Doc. 29.[1]

At the time of her August 5, 2010 sentencing, defendant Davis was 34 years of age. Her criminal record was so extensive that her Criminal History Category was Category VI. Defendant had twelve prior convictions for theft-related offenses alone.

The Court granted defendant Davis a substantial-assistance downward departure pursuant to § 5K1.1 of the Sentencing Guidelines during her sentencing. The Court also allowed defendant to voluntarily surrender to begin her term of imprisonment.

Defendant Davis' August 5, 2010 sentence included, as Conditions of Supervised Release, the following mandatory conditions:

> The defendant shall not commit another federal, state or local crime.
>
> . . . the defendant shall make restitution to the victims in the amount of $12,900 at the rate of 10% monthly gross income.

Doc. 29, p. 3, 6 (referenced Schedule of Payments). It included the following

---

[1] The Amended Judgment was to correctly reflect the imposition on August 5, 2010 of a five-year term of supervised release. *Compare* Doc. 28, p.3, *with* Doc. 29, p. 3.

standard conditions:

> . . . the defendant shall answer truthfully all inquiries by the probation officer;
>
> . . . the defendant shall . . . submit a truthful and complete written report within the first five days of each month;

Doc. 29, p. 3.  Finally, the sentence also included the following special condition:

> While a restitution balance is outstanding, the defendant shall not incur any form of debt, including but not limited to, use of existing credit cards, new credit cards . . . without approval of the U.S. Probation Office.

*Id.*  Upon completion of defendant's term of imprisonment, her five-year term of supervised release began October 13, 2012.  Doc. 34, p. 1.

On February 21, 2013, defendant Davis agreed to participate in Reentry Court, a program of intensive supervision by the Court designed to reduce recidivism by helping persons on supervised release reintegrate with society.  Within a few hours of agreeing to participate in this special program, however, defendant was caught shoplifting clothing from a Saks Fifth Avenue outlet store in Niagara Falls, New York.  She was arrested and charged with Petit Larceny in violation of New York Penal Law § 155.25.

As a result of defendant Davis' shoplifting arrest, on March 7, 2013, Magistrate Judge Hugh B. Scott, who was authorized to preside over Reentry Court proceedings by designation, imposed as a sanction a special condition of supervised release that required her to:

> . . . reside and satisfactorily participate in a Residential

3

Reentry Center for 30 days.

Doc. 30. Unfortunately, before the sanction of 30 days in a Residential Reentry Center was served, defendant was charged in a violation petition with violations of this special condition and other conditions of her supervised release.

Defendant Davis was arrested on a violation warrant and was given an initial appearance on the violation petition on April 5, 2013. Defendant was detained, and was given an initial appearance on the amended Petition, which added more charges of violations, on April 18, 2013. Defendant again sought release from custody, but the request was denied.

The Petition charged defendant Davis with the following eight violations of conditions of her supervised release:

> Charge 1: "The defendant shall not commit another federal, state or local crime." On February 21, 2013, the subject was arrested and charged with Petit Larceny, a Class A misdemeanor.
>
> Charge 2: "The defendant shall reside and satisfactorily participate in a residential Reentry Center for 30 days." On April 15, 2013, the subject was removed from the Buffalo Halfway House for program violations.
>
> Charge 3: "The defendant shall make restitution to the victims in the amount of $12,900 at the rate of 10% monthly gross income." Since the commencement of supervised release on October 13, 2013, the subject has only paid $25.00.
>
> Charge 4: "The defendant shall not commit another federal, state, or local crime." In March 2013, the subject made false statements to the U.S. Probation Office and the Court. This conduct constitutes a violation of Title 18,

> U.S.C. § 1001.
>
> Charge 5: "The defendant shall answer truthfully all inquiries by the probation officer . . . . " In March 2013, the subject made false statements to the U.S. Probation Office and the Court.
>
> Charge 6: "The defendant shall not commit another federal, state, or local crime." From October 2012 through March 2013, the subject falsified her Monthly Supervision Reports. This conduct constitutes a violation of Title 18, U.S.C. § 1001.
>
> Charge 7: ". . . the defendant shall submit a truthful and complete written report within the first five days of each month." From October 2012 through March 2013, the subject falsified her Monthly Supervision Reports.
>
> Charge 8: "While a restitution balance is outstanding, the defendant shall not incur any form of debt, including, but not limited to, use of existing credit cards, new credit cards, . . . without approval of the U.S. Probation Office." In March 2013, the subject used a RUSHCARD Visa.

Doc. 34.

Defendant Davis renewed her request for release from custody by filing a motion for reconsideration on May 16, 2013. The request for release was again denied on May 23, 2013.

An evidentiary hearing pursuant to Fed. R. Crim. P. 32.1(b)(2) on the alleged violations of supervised release was scheduled on various dates, and was adjourned for various reasons, until it was held on September 12, 13, and 16, 2013. Counsel made oral summations after the hearing on September 17 and 24, 2013, and submitted post-hearing memoranda. The defendant again sought

release from custody September 24, 2013, and her fourth request for release was also denied.

The Court evaluates the evidence offered to prove a violation of supervised release by the standard of a preponderance of the evidence. 18 U.S.C. § 3583(e)(3); *Johnson v. United States*, 529 U.S. 694, 700 (2000). While conducting the hearing and reviewing the evidence presented at the hearing, the Court is mindful that the Federal Rules of Evidence are not applicable in revocation proceedings. Fed. R. Evid. 1101(d)(3). The Federal Rules of Evidence are nevertheless a useful guide to help the Court to make findings supported by "verified facts" and by "accurate knowledge." *United States v. Bari*, 599 F.3d 176, 179 (2d Cir. 2010) (*quoting Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)).

During the violation hearing on the Petition against defendant Davis, the government introduced the testimony of U.S. Probation Officers Melissa L. Colley and Tammi S. Rogers, and of Amie A. Wojcinski, a Branch Manager of Enterprise Rent-A-Car, along with numerous exhibits. Defendant testified on her own behalf. After carefully considering the witness' demeanor and testimony, and carefully considering the exhibits admitted into evidence, and applying a preponderance of the evidence standard of proof, the Court finds the following facts and reaches the following conclusions:

**FINDINGS AND CONCLUSIONS**

On February 21, 2013, within hours of committing to participate in Reentry

Court, and personally appearing before Magistrate Judge Scott as part of that special intensive-supervision program, defendant Tamika Davis was caught shoplifting clothing from a Saks Fifth Avenue outlet store in Niagara Falls, New York. Defendant was arrested and charged with Petit Larceny in violation of New York Penal Law § 155.25, a Class A misdemeanor.

Defendant Davis admits the shoplifting, and admits that the shoplifting was Petit Larceny in violation of the mandatory condition of her supervised release that she not commit a crime while on supervised release. The Court therefore finds defendant guilty of Charge 1 of the Petition: on February 21, 2013, the defendant committed the crime of Petit Larceny by shoplifting clothing in Niagara Falls, New York.

While serving the 30-day term in a Residential Reentry Center imposed by Magistrate Judge Scott as a sanction for her shoplifting arrest, defendant Davis repeatedly failed properly to account for her whereabouts. For example, defendant wrote in Buffalo Half-Way House records that she was scheduled to be at her authorized part-time employment for an eight-hour shift on March 30, 2013, and claimed later to have been at work when, in fact, defendant was not scheduled to work and did not go to work.

A Buffalo Half-Way House Terminal Report admitted into evidence credibly states:

> [Defendant] Davis had difficulty abiding by the rules and routines of the program immediately upon her arrival [at

7

> Buffalo Half-Way House, Inc.] Ms. Davis failed to make her required accountability telephone calls to report her movements and did not return with required signed documentation while out in the community. She failed to notify agency staff when she arrived and was leaving her place of employment. This was addressed with Ms. Davis during counseling on more than one occasion. Ms. Davis was also in violation of program rules by using a cell phone, which is prohibited in the program, while at work. . . . Ms. Davis had a negative attitude regarding her participation in the program and had difficulty with authority and debated expectations and requirements on a regular basis. Ms. Davis would display aggressive body language when upset as she would become loud, verbally abusive, and argumentative with staff.

Gov't Ex. 6.

Defendant Davis was removed from Buffalo Half-Way House when arrested on the violation warrant on April 5, 2013 that was issued for some of the violations that are the subjects of this revocation proceeding, including her failure to satisfactorily participate at the Residential Reentry Center. The Court finds defendant's conduct at Buffalo Half-Way House during her three-week stay from March 13, 2013, until April 5, 2013, was not satisfactory participation for a period of 30 days and was therefore a violation of the special condition of her supervised release imposed by Magistrate Judge Scott.

Defendant Davis contends she did not violate this special condition of supervised release as is charged in the Petition. The Petition does provide, in a subheading for Charge 2: "On April 5, 2013, the [defendant] was removed from the Buffalo Halfway House for program violations." Defendant argues the hearing

evidence showed that U.S. Probation was actively involved in the decision to terminate defendant from Buffalo Half-Way House and that she was terminated primarily because of the arrest for alleged violations and not because of a finding of unsatisfactory performance made by reentry center personnel after due process. Defendant argues there is insufficient evidence Buffalo Half-Way House terminated defendant from the reentry center because of unsatisfactory participation, and since the termination is the violation charged in the Petition, she should be found not guilty of Charge 2.

However, based upon facts adduced during the violation hearing, the Court finds defendant Davis' performance during her stay at Buffalo Half-Way House, Inc., was unsatisfactory. Defendant's violations of rules of Buffalo Half-Way House that she account for her whereabouts, even after she was advised to correct her behavior, establish her failure to behave satisfactorily and violated the special condition of her supervised release requiring that she participate in a Residential Reentry Center satisfactorily for 30 days. While there was no formal administrative determination of unsatisfactory performance by Buffalo Half-Way House personnel, the Court does not need such a determination to make findings of unsatisfactory participation any more than it need rely upon a conviction of a state or local court to find whether a defendant committed a state or local crime while on supervised release. *See United States v. Chatelain*, 360 F.3d 114, 124-25 (2d Cir. 2004).

The Court has considered all of defendant Davis' arguments that she did not

9

violate this special condition of supervised release on the theory that she was not terminated from the Buffalo Half-Way House, Inc., due to program violations and finds the arguments unpersuasive. Although proof during the hearing did not establish the extent to which various events and persons contributed to a decision to terminate defendant from participation at Buffalo Half-Way House, Inc., the description of the facts underlying the alleged violation of the special condition of supervised release stated in the Petition gave defendant fair and adequate notice of her unsatisfactory performance alleged to have violated the special condition of her supervision. Fed. R. Crim. P. 32.1(b)(2)(A), (B); *United States v. McNeil*, 415 F.3d 273, 275-76 (2d Cir. 2005) (*citing United States v. Chatelain*, 360 F.3d 114, 121 (2d Cir. 2004)). The Court therefore finds defendant's conduct alleged in the Petition and proven by a preponderance of the evidence, including specifically defendant's unaccounted-for absence on March 30, 2013 from Buffalo Half-Way House, and her repeated failures properly to account for her whereabouts, establish that defendant violated the condition of 30 days of satisfactory performance at a Residential Reentry Center. The Court finds defendant guilty of the violation alleged in Charge 2 of the Petition.

At the time of defendant Davis' arrest on the violation warrant on April 5, 2013, defendant had $1,000 cash in her possession. She had been spending approximately $1,000 monthly renting cars from Enterprise Rent-A-Car during November, 2012, through March, 2013.

Defendant Davis was required as a condition of supervised release to "make monthly payments [of her restitution obligation] at the rate of 10% of her monthly gross income." Doc. 29, pp. 3, 6. Defendant made no monthly payments of restitution during her supervision. Defendant therefore violated the mandatory condition of her supervised release that she make monthly restitution payments.

Defendant Davis argues that she did not violate her obligation to make monthly payments of restitution because the United States used formal legal process to collect $5,738 during two separate months to apply to defendant's restitution obligation during her term of supervision. Restitution greater than 10% of defendant's monthly gross income during one particular month is not applied to satisfy defendant's obligation to make monthly payments, however. Defendant did not voluntarily make any monthly payments.

Defendant Davis also argues that her monthly gross income from her part-time work was so small, the amounts she would have paid at a rate of 10% of her gross income would have been *de minimus* and her failure to make such small payments should not give to rise to a violation of supervised release. The Court rejects this contention. The mandatory condition of supervision to make monthly restitution payments serves to remind defendant that she still owes her victims recompense for her criminal behavior as well as to require defendant pay the restitution. The violation is not trivial even if the amount of the missed payments seems to defendant small in comparison to the unpaid balance of restitution she

still owes. The Court finds the defendant guilty of failing to make restitution to her victims at the rate of 10% of monthly gross income as alleged in Charge 3.

When defendant Davis entered Buffalo Half-Way House, Inc., in March of 2013, she asked Half-Way House personnel if she could drive and disclosed to Half-Way House personnel she had been renting cars to drive. Half-Way House personnel told U.S. Probation Officer Rogers, who asked defendant about renting cars on March 19, 2013. Defendant told Officer Rogers that Probation Officer Colley already knew defendant was renting cars. However, Officer Colley denies either being aware, or being told by defendant, that defendant was renting cars.

Based upon the testimony of Officer Rogers, Officer Colley, and defendant Davis, and based upon the exhibits admitted during the hearing, the Court finds that defendant told Officer Rogers that Officer Colley knew defendant had been renting cars. The Court also finds defendant understood that her statement to Officer Rogers that Officer Colley knew about defendant renting cars was a false statement, and that defendant made the false statement intending to mislead Officer Rogers to avoid responsibility for concealing her relatively substantial expenditures renting cars.

Defendant Davis had been spending approximately $1,000 per month renting cars, for four months, that defendant did not report on monthly written reports to U.S. Probation. Defendant was earning less than $200 a month from her part-time employment. Defendant was receiving some public assistance to meet

12

her financial responsibilities, but to pay for the rental cars, she had to rely upon money received from at least one source she had not disclosed to U.S. Probation as a source of income in her monthly written reports.

Defendant Davis had substantial family responsibilities to meet. Defendant was obliged to pay restitution at a rate of 10% of her monthly gross income to victims of her bank fraud and was not making these monthly restitution payments. When asked about renting cars by Judge Scott during a Reentry Court session on March 21, 2013, defendant was evasive.

Defendant Davis argues that her March 19, 2013 oral statement to Officer Rogers that Officer Colley knew defendant had been renting cars was not a material statement under 18 U.S.C. § 1001(a)(2). But a statement is material under § 1001 if it has "a natural tendency to influence, or [a] capa[city] of influencing, the decision of the decision making body to which it was addressed." *United States v. Gaudin*, 515 U.S. 506, 509, 512 (1995). Defendant argues that her statement to Officer Rogers was not capable of influencing defendant's supervision, and so it was not a material false statement in violation of 18 U.S.C. § 1001 and she should not be found to have violated § 1001 as alleged in Charge 4 of the Petition.

United States Probation was charged with supervising defendant Davis' efforts to become a law-abiding and fiscally-responsible member of the community. Defendant's expenditure of a large amount of money on a monthly basis, relative to

13

her total monthly income, on rental cars from Enterprise Rent-A-Car, given her financial circumstances, and especially given her past record of theft-related crimes and recidivism, was important for United States Probation to know to supervise defendant's efforts to meet her responsibilities.

Officer Rogers was unaware defendant had been spending a relatively large amount of money renting cars until shortly before Officer Rogers asked defendant about it. When defendant falsely stated that Officer Colley was aware defendant was renting cars, defendant attempted to prompt Officer Rogers to conclude defendant had already disclosed her expenditures renting cars to United States Probation. Defendant's statement, if it had been true, might have absolved her of a share of responsibility for the choice to spend approximately $1,000 month renting cars and nothing on restitution to victims, or more on her family obligations, for example. The Court finds defendant's claim that Officer Colley knew she was renting cars was a material false statement in violation of 18 U.S.C. § 1001(a)(2) and in violation of the condition of defendant's supervision that the defendant answer truthfully inquiries made by the probation officer. Defendant is therefore guilty of the violations of the conditions of her supervised release alleged in Charges 4 and 5 of the Petition.

On Monthly Supervision Reports for the months of November of 2012 through March of 2013, defendant Davis did not disclose as an expenditure that she was spending approximately $1,000 a month renting cars and did not disclose

14

she was driving any cars where she was required on the Reports to list vehicles she owned or was driving. During testimony regarding why she failed to disclose renting cars for extended periods of time, and failed to disclose her expenditures for the cars, defendant offered excuses that she did not pay attention while preparing the Reports and that she was mistaken about what she was required to disclose. Defendant testified that concealing the rental cars and expenditures was an oversight. However, after observing and listening to defendant's testimony, and after careful review of all of the Monthly Reports admitted into evidence as Government Exhibit 3, in light of the testimony of Officer Rogers and Officer Colley, the Court finds defendant's testimony about the Monthly Reports was not credible.

Defendant Davis was advised of her various financial obligations by the Court when her sentence was imposed, by United States Probation Officers, and by staff of Buffalo Half-Way House, Inc., staff. Defendant understood her obligations to make restitution payments monthly and to disclose her finances and her use of vehicles. She chose not to do so. The Court finds defendant intentionally concealed that she was spending money renting cars for extended periods of time, and violated of Title 18 U.S.C. § 1001(a), as well as the condition of her supervision that her Monthly Reports be truthful, as alleged in Charges 6 and 7 of the Petition.

Defendant Davis is charged in Charge 8 of the Petition with incurring debt using a RUSHCARD Visa card in violation of the special condition of her

supervision that she not incur debt, while owing restitution, without approval of the U.S. Probation Office.  The RUSHCARD Visa is a debit card, not a credit card. The owner of the card must deposit money into an account before using the card to spend the money, and use of the card transfers only money that is in the account without creating new debt.  There is no allegation or evidence defendant borrowed any money to fund her use of the RUSHCARD Visa as a payment mechanism. The Court finds defendant not guilty of Charge 8 of the Petition:  her use of RUSHCARD Visa debit card did not incur debt and was not use of a credit card.

## CONCLUSION

For the above-stated reasons, the Court finds the defendant, Tamika Davis, GUILTY of Charges 1 through 7 of the April 18, 2013 Amended Petition for Offender Under Supervision and finds defendant Davis NOT GUILTY of Charge 8 of the Petition.  Sentencing for defendant's supervised release violations, and a schedule for submission of sentencing memoranda, will be scheduled after consultation with counsel for the parties.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: December 5, 2013